UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)   CRIMINAL NO. 04-10262-DPW<br>ROBERT D'ANDREA and )<br>DEBRA D'ANDREA )<br>)<br>Defendants.   )<br>) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this memorandum in advance of the September 9, 2005 sentencings of Robert D'Andrea and Debra D'Andrea.

Overview

On May 20, 2005, Robert D'Andrea and Debra D'Andrea pleaded guilty, without agreement, to an indictment charging them with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and eleven counts of failure to pay over federal income, social security, and Medicare taxes, in violation of 26 U.S.C. § 7202. The defendants' convictions arose out of their failure to account for and pay over federal income, social security and medicare withholding taxes for employees of their business, which operated under the name RAD Steel during the relevant time period.

**I.   Factual Background**

The parties are in substantial agreement with respect to most of the relevant facts.

As summarized in the Presentence Report ("PSR"), the charges in the indictment involve the operations of a steel erection, rebar and miscellaneous iron business known as RAD Steel. Robert held the titles of president, treasurer, and clerk of RAD Steel. He was responsible for

overseeing the company's field work   Debra was responsible for the company's accounting, bookkeeping, and payroll functions.  RAD Steel operated from 1997 to 2002.  The D'Andreas operated a predecessor company, known as D&D Steel, from 1994 to 1997.  A successor company, named RDI Iron Works, Inc., was formed following the dissolution of RAD Steel.

The charges in the indictment involve the operations of RAD Steel – specifically, the D'Andreas' failure to account for and pay over federal income, social security and medicare withholding taxes for employees of that business.  Although the D'Andreas deducted taxes from the wages of RAD Steel's employees, and distributed weekly pay stubs and annual W-2 forms to the workers detailing the withholdings, the D'Andreas did not file with the IRS any quarterly Forms 941 or annual Forms 940 accounting for the taxes that they had withheld.  With the exception of three partial payments, they also never paid over the withheld funds to the IRS.

The D'Andreas were aware of their obligation to collect, account for, and pay over federal withholding taxes for their employees.  Prior to the formation of RAD Steel, the D'Andreas had largely complied with such obligations in connection with the employees of their predecessor company, D&D Steel.  They paid D&D's employees by check; they withheld the required taxes; they accounted for those withholdings on quarterly Form 941's and yearly Form 940's that they filed with the IRS; and they paid over the withheld taxes to the IRS.

Following the dissolution of D&D Steel, however, and the formation of RAD Steel, the D'Andreas materially altered their payroll practices.  For example, rather than paying their employees by check, as they had with D&D's workers, the D'Andreas paid RAD's employees by cash.  In addition, although the D'Andreas continued to withhold income and trust fund taxes from their employees' wages, unlike D&D, they filed no Form 941's and no Form 940's for RAD

Steel with the IRS. Employees were given weekly payroll slips and annual W-2's stating the amount of the taxes that had been withheld from their pay, but RAD paid over almost none of those taxes to the IRS. Also, the D'Andreas withheld no taxes from overtime pay, which was paid at employees' straight hourly rates.

The following chart sets forth by quarter the amount of the taxes that the D'Andreas withheld from the pay of RAD Steel's employees but did not pay over to the IRS. All of the quarters are encompassed by the indictment's conspiracy count. The indictment also charges the last eleven quarters as freestanding counts under 26 U.S.C. § 7202. The primary sources of the information contained in the chart are payroll slips, W-2's, and internal accounting records produced by RAD Steel to the IRS during the course of the investigation.

| Quarter | FICA Wages | FICA Taxes Withheld | Federal Taxes Withheld | Payments Paid Over to IRS | Total Unreported and Unpaid Trust Fund Taxes |
|---|---|---|---|---|---|
| 6/97 | $18,458.28 | $1,407.39 | $2,520.00 | | $3,927.39 |
| 9/97 | $48,754.85 | $3,732.94 | $7,115.00 | | $10,847.94 |
| 12/97 | $41,116.11 | $3,145.47 | $6,255.00 | | $9,400.47 |
| 3/98 | $35,472.80 | $2,713.78 | $5,062.00 | $10,000.00 | ($2,224.22) |
| 6/98 | $57,713.44 | $4,433.76 | $9,882.00 | | $14,315.76 |
| 9/98 | $50,157.49 | $3,848.43 | $8,137.00 | | $11,985.43 |
| 12/98 | $53,386.77 | $4,073.03 | $8,644.00 | $752.06 | $11,964.97 |
| 3/99 | $43,555.80 | $3,325.04 | $5,758.00 | $1,274.88 | $7,808.16 |
| 6/99 | $74,652.44 | $5,708.00 | $12,050.00 | | $17,758.00 |
| 9/99 | $93,146.83 | $7,125.63 | $13,679.00 | | $20,804.63 |
| 12/99 | $41,743.50 | $3,193.41 | $6,322.00 | $1,065.04 | $8,450.37 |

| | Quarter | FICA Wages | FICA Taxes Withheld | Federal Taxes Withheld | Payments Paid Over to IRS | Total Unreported and Unpaid Trust Fund Taxes |
|---|---|---|---|---|---|---|
| | 3/00 | $45,842.50 | $3,507.76 | $5,839.00 | $5,471.52 | $3,875.24 |
| | 6/00 | $60,121.27 | $4,599.52 | $9,786.00 | | $14,385.52 |
| | 9/00 | $65,370.15 | $5,000.79 | $10,903.00 | | $15,903.79 |
| | 12/00 | $33,331.83 | $2,549.88 | $5,889.00 | | $8,438.88 |
| **Total** | | **$762,824.06** | **$58,364.83** | **$117,841.00** | **$18,563.50** | **$157,642.33** |

In addition to the above amounts, the D'Andreas also failed to withhold, account for, or pay over approximately $16,000 in payroll taxes relating to overtime wages, from which they made no deductions. The total amount of the withholding tax loss is $173,642.33.

Sentencing Guidelines and Recommendation

Based on the foregoing loss figure, punishment in this case is calculable as follows:

| | | |
|---|---|---|
| Base Offense Level (Based on Tax Loss of $120,000-200,000) | 15 | U.S.S.G. §§ 2T1.1 and 2T4.1 |
| Acceptance of responsibility | -2 | |
| **TOTAL** | **13** | |
| *Guideline Range* | *12 - 18 months* | Zone D |
| *Applicable Fine* | *$3,000 - $30,000* | U.S.S.G. § 5E1.2 |

The Probation Department concurs with the foregoing Guidelines computations. (PSR ¶ 50).

II. **Sentencing Recommendation**

The United States recommends the following sentence for each defendant. The recommendation largely tracks the low end of the guidelines range:

4

1.  one year and one day's imprisonment;

2.  3 years supervised release; and

3.  a $1,200 special assessment.

If requested by the defendants, the government has no objection to the staggering of the periods of incarceration, in order to permit the D'Andreas' to provide continuous parental care to any dependent children.

In view of the defendants' financial disclosures, the government recommends that the criminal fine be waived so that the D'Andreas may begin paying off their tax obligations more expeditiously.

Finally, the government requests that the court require, as conditions of the defendants' supervised release, that the D'Andreas must, within six months of sentencing or Robert's release from custody, whichever is later:

(a) Cooperate with the Examination and Collection Divisions of the Internal Revenue Service;

(b) Provide to the Examination Division all financial information necessary to determine Defendants' prior tax liabilities;

(c) Provide to the Collection Division all financial information necessary to determine Defendants' ability to pay;

(d) File accurate and complete tax returns for those time periods for which returns were not filed or for which inaccurate returns were filed; and

(e) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MICHAEL J. SULLIVAN<br>United States Attorney |
| By: | /s/ **Michael J. Pineault**<br>Michael J. Pineault<br>Assistant U.S. Attorney<br>United States Courthouse, Suite 9200<br>1 Courthouse Way<br>Boston, MA  02210 |
| Dated: September 6, 2005 | (617) 748-3261 |